plements and were intended to be sold as a food for humans.

4. Orotic Acid is found naturally in cow's milk. The Orotic Acid seized in this action was manufactured by a fermentation process, it was not obtained from cow's milk.

5. Based on the testimony and exhibits before this Court, the Court finds that Orotic Acid is not accepted among knowledgeable nutritionists and physicians as having either nutritional or therapeutic properties. There is no evidence that Orotic Acid is needed in the diet of humans to supplement the body's synthesis of Orotic Acid.

6. Orotic Acid was not in common use as a separate food ingredient in dietary supplements or in any other food prior to January 1, 1958.

7. Orotic Acid is not generally recognized recognized among experts qualified by scientific training and experience to evaluate its safety as having have been adequately shown through scientific procedures or experience based on common use in food to be safe under the conditions of its intended use.

8. No sanction or approval was ever granted prior to September 6, 1958, under any federal law permitting the use of Orotic Acid in foods as a food additive.

### Conclusions of Law

1. This Court has jurisdiction of this action under 21 U.S.C. § 301, et seq.

2. The Court finds there is no regulation in effect permitting the use of Orotic Acid in foods as a food additive or exempting Orotic Acid from the food additives requirements of the Federal Food, Drug, and Cosmetic Act.

3. The Court finds that Orotic Acid is a food, a food additive, an unsafe food additive, and adulterated within the meaning of 21 U.S.C. §§ 321(f), 321(s), 342(a), 342(a)(2)(C). The Orotic Acid will be condemned and cross-charged against the claimant.

Gerard V. CAREY et al., Plaintiffs,

v.

U. S. INDUSTRIES, INC., a Delaware Corporation, et al., Defendants.

No. 75 C 4437.

United States District Court, N. D. Illinois, E. D.

April 6, 1976.

Donald Page Moore, Michael H. King, of Antonow & Fink, Chicago, Ill., for plaintiffs.

Henry M. Schaffer, of Jenner & Block, N. A. Giambalvo, of Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for defendants.

### MEMORANDUM DECISION

MARSHALL, District Judge.

The defendants' motion to dismiss this action for lack of subject matter jurisdic-

tion presents a single issue: whether the citizenship of a business trust for the purposes of diversity is determined by the citizenship of its trustees or its individual shareholders. The plaintiffs, the trustees of First Pennsylvania Mortgage Trust, urge us to adopt the reasoning of *Mason v. American Express Company,* 334 F.2d 392 (2d Cir.1964), in which the court analogized a joint stock company to a corporation and determined diversity under 28 U.S.C. § 1332(c). But to follow *Mason* we would have to ignore the Supreme Court's decision in *United Steelworkers of America v. R. H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). There, the Court narrowly construed § 1332(c) as applying only to corporations and not other business entities, regardless of their functional similarities. Thus, our remaining alternatives are to treat First Pennsylvania as: (1) a traditional trust, and determine diversity by reference to its trustees, *Bullard v. City of Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933); or, (2) as an unincorporated association, and determine diversity by reference to all the shareholders or beneficiaries.

 Not all the courts which have chosen the second alternative have articulated the reasons for their decisions. *See, e. g., Fox v. Prudent Resources Trust,* 382 F.Supp. 81 (E.D.Pa.1974). Those courts that do, however, persuasively emphasize the very real differences between the traditional trust and the modern business trust. The object of an ordinary trust is to hold and conserve a particular res, while a business trust is simply a convenient medium for conducting business and sharing profits. *Morrissey v. Commissioner,* 296 U.S. 344, 357, 56 S.Ct. 289, 80 L.Ed. 263 (1935). In fact, the business trust closely resembles a corporation in its centralized control, limited liability, profit motivation, and free transfer of the beneficial interest. *Id.* at 359, 56 S.Ct. 289. As perceptively noted in *Jim Walters Investors v. Empire-Madison, Inc.,* 401 F.Supp. 425, 428 (N.D.Ga.1975), the business trust resembles the traditional trust in name only. Hence, we join the other courts which have held that the citizenship of a business trust is that of each of its members, realizing, as did they, that this decision almost inevitably denies a business trust access to the federal courts unless the cause of action states a federal claim. *Chase Manhattan Mortgage and Realty Trust v. Pendley,* 405 F.Supp. 593 (N.D. Ga.1975); *Jim Walters Investors, supra; Larwin Mortgage Investors v. Riverdrive Mall, Inc.,* 392 F.Supp. 97 (S.D.Tex.1975).

We also recognize the inherent illogic in this position. Initially, we rejected plaintiffs' argument that because it is the functional equivalent of a corporation, the citizenship of a business trust can be determined under § 1332(c). Then, noting that the business trust operates more like a corporation than a traditional trust, we decided to treat it as an unincorporated association in choosing between the remaining methods for determining diversity. Nonetheless, the strict formalism of *Bouligny* compels the first conclusion, and a careful execution of our duty to analyze the operation of a business entity in determining diversity mandates the second. *Jim Walters Investors, supra,* at 428–429.

The defendants' motion for summary judgment on the issue of subject matter jurisdiction is granted, and the cause is dismissed.