**F.P.P. ENTERPRISES, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. CV. 84–0–570.

United States District Court, D. Nebraska.

Sept. 10, 1986.

Arthur P. Tranakos, Atlanta, Ga., for plaintiffs.

Janice Teague, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

STROM, District Judge.

This matter is before the Court for determination after trial on August 19, 1986. The parties have presented their evidence and briefs supporting their respective positions, and this case is now ready for decision.

### I. BACKGROUND

In this action, the named plaintiffs, F.P.P. Enterprises and D & S Trust seek a permanent injunction enjoining the defendant from further actions of levy and restraint against property of the named plaintiffs, and seek recovery from the defendant of all amounts which have heretofore been improperly levied and distrained, together with taxable costs. In their amended complaint, filed October 24, 1985, plaintiffs allege they are trusts organized under the laws of the State of Wyoming; that they are the owners of certain real property located in the State of Nebraska, described in several exhibits attached to plaintiffs' complaint; that the defendant through the Commissioner of Internal Revenue has caused notices of levy to be filed against said properties, and has attempted to and has levied on said properties and rents due and owing plaintiffs on the aforesaid properties; and that the record title to the property levied against is in the name of the respective plaintiffs. Plaintiffs further allege they are not indebted to the defendant or its agency, the Internal Revenue Service, and that they will suffer irreparable injury, loss and damage if the defendant is not enjoined as prayed.

The defendant has filed an answer to plaintiffs' amended complaint in which the United States admits that the properties described in the exhibits attached to plaintiffs' complaint have been levied against by the defendant pursuant to notices of levy and generally denies the other allegations in the amended complaint as they are perti-

nent or material to this action. Additionally the defendant alleges the Court lacks subject matter jurisdiction over this action, and that plaintiffs' amended complaint fails to state a claim upon which relief may be granted and prays that plaintiffs' amended complaint be dismissed.

Essentially the issues presented by the pleadings and the parties' separate pretrial orders are (1) whether either F.P.P. Enterprises or D & S Trust is a valid trust under either the laws of the State of Wyoming or of the State of Nebraska; or (2) whether said trusts are shams and in effect, the alter ego of the taxpayers Donald O. and Sally A. Beason.

This action is brought pursuant to Title 26, United States Code § 7426(a)(1), which provides:

[I]f a levy has been made on property ... any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest or lien upon such property and that such property is wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

The plaintiffs claim they are persons other than the taxpayers. Defendant asserts that the trusts are alter egos of the taxpayers and has raised an issue as to whether or not the trusts have standing to sue. Plaintiffs also seek to test the validity of the assessment pursuant to which the notice of federal tax lien, notice of levy, and notice of seizure were filed. (See, e.g., Exhibit 200, 201 and 203).

## II. FINDINGS OF FACT

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court now makes the following findings of fact.

Donald O. Beason and Sally A. Beason are husband and wife residing in Grand Island, Nebraska, in a residence property located at 2415 Del Monte Avenue. During the course of their marriage, they acquired certain real estate, all of which is the subject of the present action. Because of continuing marital problems commencing back in the late 1970's, Sally A. Beason has refused to file joint income tax returns with her husband, Donald O. Beason.

Essentially, four pieces of property are involved. Tract A is an acreage; Tract B and Tract C, an office building and adjacent vacant lot, will be treated as one tract; Tract D is rental property and Tract E is the home property. Subsequent to trial, plaintiff filed a motion to amend the pleadings to strike Tract A from the complaint because that realty had been foreclosed upon by First Federal Savings and Loan Association of Lincoln. In light of the Court's decision, that motion is rendered moot and will be denied.

Tract A is an acreage. It was acquired by warranty deed (Exhibit 204) in 1978 for recited consideration of $95,000. Title to the property was taken in Donald O. Beason's name only. The property is mortgaged to First Federal (Exhibits 205 through 208).

Tracts B and C, the office building and adjacent lot, were acquired in 1977 by warranty deed (Exhibit 212) for recited consideration of $54,500. Both tracts are described in that warranty deed. The property was taken by the Beasons in joint tenancy. The property is mortgaged to First Federal (Exhibits 212 through 219). Mr. Beason has operated an insurance and financial planning business out of the office since that date. The name on the window and on a sign on the roof is "Financial Planning and Protection". According to Mr. Beason's testimony, "Financial Planning and Protection" is a listed business name in the Grand Island telephone directory.

Tract D, the rental property, located at 1034 South Vine in Grand Island, was acquired by the parties in August of 1968 (Exhibit 223) in joint tenancy, for recited consideration of $15,000. The property is mortgaged to Equitable Building and Loan Association in Grand Island (Exhibits 222 through 227). The Beasons resided in this property until they acquired Tract E in February of 1973 (Exhibit 231).

Tract E, located at 2415 Del Monte in Grand Island, then became their residence property and they continue to live in it to this date. The title of that property was also taken in joint tenancy. The property is also mortgaged to Equitable (Exhibits 231 through 235).

Mr. Beason is in the insurance and financial planning business. He operates as a sole proprietorship and has always done so. The Beasons' income tax returns for 1979, 1980, 1981 and 1982 (Exhibits 239, 240, 241 and 242) contain Schedule C's regarding the operation of this business. Prior to 1977, the Beason's reported taxes and interest paid on loans which they obtained in connection with the purchase of each of these properties on their tax returns. The office building and adjacent lot were reported in the Schedule C where deductions for interest and taxes were taken.

The purported trusts were allegedly created by instruments executed on December 21, 1978 (Exhibits 237 and 238). Neither of the Beasons signed the documents. Their creator is one Ronald R. Soester, whose name never appears again in this litigation or in any of the documents. One of the trusts is named "F.P.P. Enterprises;" and the other is named "D & S Trust."

The trust instruments recite that the creator of the trust shall bargain or exchange ten dollars and trust certificates for real and/or personal property of the exchangers. The exchangers in turn convey property to the creator to hold in the trust organization name. The trust instruments state that "[t]he true trust organization shall be operated for distribution purposes only, and not for profit...." The instruments further provide that "[f]or convenience the trust certificates used for distribution shall be divided into One Hundred Units. They shall be non-assessable, non-taxable, non-negotiable and shall not constitute a security of any kind, and the lawful possessor thereof shall be construed as the lawful owner thereof."

In minutes attached to the trust instruments for F.P.P. Enterprises (Exhibit 237) and D & S Trust (Exhibit 238), the creator is identified as Ron Soester and the exchangers and trustees are identified as Lowell G. and Carolyn Anderson. The minutes are signed by Soester and by the Andersons. The Beasons' signatures do not appear on the trust documents.

Also attached to the trust instrument for F.P.P. Enterprises are quit claim deeds conveying real property from the Beasons to F.P.P. Enterprises. The office building and adjacent lot were conveyed by quit claim deed signed by both of the Beasons to F.P.P. Enterprises under date of April 9, 1979. The other three tracts were transferred by quit claim deeds to D & S Properties (not to D & S Trust) on April 23, 1979 (See Exhibit 238). The only consideration for the transfer of the properties to F.P.P. Enterprises and D & S is ten dollars and other good and valuable consideration.

Additionally, certificates representing beneficial shares in each of the trusts are attached to the documents. Exhibit 237 reflects that on January 5, 1979, a certificate representing one hundred units in F.P.P. Enterprises was issued to Donald O. Beason and Sally A. Beason. The words "Void for Reissuance" are written across the certificate and on September 11, 1979, another certificate representing one hundred units in F.P.P. Enterprises was issued in the name of the Beasons' children. None of the dates of issuance of certificates corresponds to the transfers of real estate.

The Beasons have continued to live in the residence. They have continued to receive income from rental property, and they paid the insurance, taxes and mortgage payments due on the properties. Mr. Beason testified that he made an arrangement with the trustees, the Andersons, to lease these properties back. The lease payments would be the mortgage payments plus taxes, plus insurance on the properties, and he would keep the income.

According to Mr. Beason's testimony, taxes and interest paid on the various properties have been deducted on the Beasons' personal tax returns for the years 1979 through 1982 and up to the present time.

Schedules attached to each of the returns (Exhibits 239 through 242) reflect that the rent from rental property is considered income to the Beasons. They took a depreciation deduction each year and in some years, took a deduction for taxes and interest. Mr. Beason also testified that the properties were transferred subject to the mortgages. However, it is undisputed that the trusts never filed any federal or state tax returns reflecting realization of income in the form of mortgage payments and tax payments as rent from the Beasons. Schedule C of the personal tax returns of Mr. and Mrs. Beason shows no deduction for rent paid by the business.

Neither trust has ever been registered or recorded either in the State of Nebraska or in the State of Wyoming. The Beasons paid no real estate transfer taxes as required by law in the State of Nebraska. When registering the quit claim deeds, they identified the transfers as exempt "family business reorganizations" (Exhibits 217, 218, 226, 234 and 207). It is undisputed that there is no familial relationship between the Beasons and either the Andersons or Ron Soester.

Mr. Beason testified that the transfers were made at a time when he anticipated either a divorce or extensive medical bills for an illness of his wife. His intent in effecting the transfers was to shelter his assets from potential creditors and from his wife in the event of a divorce settlement.

It is clear that the Beasons have treated the properties in exactly the same manner after the dates of alleged transfers as they did prior to that time. They have simply treated the property as their own.

## III. CONCLUSIONS OF LAW

■ At the outset, the Court notes that 26 U.S.C. § 7426(c) provides that "for purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid." Accordingly, plaintiffs do not have standing to challenge the validity of the assess-

ment and have indeed acknowledged the existence of the assessment by virtue of the parties' stipulating into evidence the notice of federal tax lien (Exhibit 200) and the notices of levy, all of which recite the date of assessment upon which said notices are based. For these reasons, the plaintiffs' effort to challenge the validity of the assessment is without merit.

■ With regard to claims of wrongful levy, the threshold issue is whether the subject trusts are valid so as to have standing to challenge the government's action. The validity of a trust of an interest in land is determined by the law that would be applied by the courts of the situs. Restatement, Conflict of Laws 2d. § 278. Those courts would usually apply their own local law in determining such questions. Id., § 223; *Quasha v. Shale Development Corp.*, 667 F.2d 483, 487 and n. 4 (5th Cir.1982). Accordingly, Nebraska law applies to the determination of the validity of the trusts.

Generally, the elements essential to creation of a trust in Nebraska are (1) a person competent to create a trust; (2) an indication of intention; (3) property to which the trust may and does pertain; (4) a definite and complete present disposition of the property; (5) a provision at least by implication, for office of trustee; and (6) a person capable of holding the equitable interest in property as beneficiary. *Jaiser v. Milligan*, 120 F.Supp. 599, 612 (D.Neb. 1954). The purported trusts at issue fail for several reasons.

■ First, a trust is not created unless there is a beneficiary who is definitely ascertained at the time of the creation of the trust or definitely ascertainable within the period of the rule against perpetuities. *First National Bank in Ord v. Schroeder*, 222 Neb. 330, 383 N.W.2d 755, 757 (1986). The trusts herein do not identify the beneficiaries nor provide a method for determining who the beneficiaries were intended to be. The trusts provide only that certificates of beneficial interest shall issue and that the "lawful possessors thereof shall be

construed the true and lawful owners thereof...." There is no provision in the trust document indicating who is to receive the certificates nor are the trustees empowered to make that determination.

A family trust containing language identical to that in the present trusts was invalidated by the Nebraska Supreme Court in *First National Bank in Ord v. Schroeder.* The court noted:

"[i]t is essential to the creation and existence of a trust that a ... beneficiary ... *be designated* with sufficient clarity and certainty to be capable of identification, although not necessarily by name ..." (Emphasis supplied [in Ord]). 76 Am. Jur.2d Trusts, § 135 at 377 (1975). The trust simply designates the owner as the beneficiary without providing how possession and ownership shall occur. Resultingly, the trust, on its face, does not adequately identify its beneficiaries and, therefore, must fail.

*First National Bank in Ord v. Schroeder,* 222 Neb. at 332, 383 N.W.2d at 757.

▬ Second, in order to create a trust, the person creating the trust must have some present or future right to, or interest in, the fund directed to be set apart. *Fisher v. Donovan,* 57 Neb. 361, 364, 77 N.W. 778, 779 (1889). Moreover, a trust in an interest in land must comply with the statute of frauds which mandates that no estate or interest in land, including a trust therein, may be "created ... or declared, unless by operation of law, or by deed or conveyance in writing, *subscribed by the party creating ... or declaring the same.*" (Emphasis added). Neb.Rev.Stat. § 36–103. The trust instruments were not signed by the Beasons. Only the Beasons could have created the trust relationship with regard to the property which they owned. The trusts herein were supposedly created by Ron Soester. Soester had no interest in the property which became the corpus of the trust. It is fundamental that in order for a present trust to be created, there must be a defined interest or ascertainable object of ownership. *Kully v. Goldman,* 208 Neb. 760, 762, 305 N.W.2d

800, 802 (1981). Because there is no ascertainable property to which the so-called "creator" of the trusts, Ron Soester, had any rights of ownership, the trusts must fail.

▬ Plaintiffs also assert that the trusts are business trusts. "[A] business trust resembles the traditional trust in name only." *Carey v. U.S. Industries, Inc.,* 414 F.Supp. 794, 795 (N.D.Ill.1976). "The object of an ordinary trust is to hold and conserve a particular res, while a business trust is simply a convenient medium for conducting business and sharing profits." Id. A business trust must nonetheless conform to the statutory and other requirements relating to trusts generally and should be executed in the same manner as are other trust instruments and contracts. See, *Hecht v. Malley,* 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924). The present trusts thus fail for the reasons stated infra.

Moreover, the trusts exhibit none of the usual attributes of a business trust. A business trust closely resembles a corporation in its centralized control, limited liability, profit motivation and free transfer of beneficial interests. *Carey v. U.S. Industries, Inc.,* 414 F.Supp. at 795.

In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements and the purchase, management and sale of properties, or for dealings in securities or other personal property, or for the production, or manufacture, and sale of commodities; or for commerce or other sorts of business; or those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the arrangement, seek to share the advantages of a union of their interests in the common enterprise.

*Koenig v. Johnson,* 71 Cal.App.2d 739, 163 P.2d 746, 751 (1945) (quoting *Morrissey v. Commissioner of Internal Revenue,* 296 U.S. 344, 357, 56 S.Ct. 289, 295, 80 L.Ed. 263 (1935).

■ The nature of the trust as a business organization is to be determined from the terms of the trust instrument. *Id.* The trust instruments at issue do not authorize business activities for the purpose of carrying on a business for profit. In fact, the trusts documents expressly negate a profit motivation. The evidence shows that the trusts were created to shelter Mr. Beason's assets from potential medical debts and from his wife in the event of a divorce. The trusts were not created as a business venture.

Additionally, in a business trust, the ultimate power of control over the property must rest with the trustees. "[R]eservation of complete management to the beneficiaries to the exclusion of the trustees leaves the participants in the status of partners or joint venturers and deprives them of the advantage of a true trust arrangement." *Engineering Service Corp. v. Longridge Investment Co.,* 153 Cal.App.2d 404, 314 P.2d 563, 566 (1957). The evidence herein shows that the trustee did not exercise the ultimate power of control over the property. Thus, the so-called business trust fails in another of its essential elements.

■ Regardless of whether characterized as trusts, business trusts, partnerships, corporations, or unincorporated associations, it is clear that the entities at issue are shells acting as alter egos for the Beasons. Thus the property held in the name of the trusts can be levied on to satisfy the Beasons' tax liabilities. In *Loving Savior Church v. United States,* 728 F.2d 1085 (8th Cir.1984), the Eighth Circuit Court of Appeals dealt with a situation similar to that at issue herein. In order to avoid tax liability, taxpayers transferred property to family trusts and then to a church which the taxpayers had set up. The Eighth Circuit affirmed the district court's findings that the taxpayers had fraudulently conveyed the property to avoid a federal tax lien and that the Loving Savior Church was the alter ego of the taxpayers.

Similarly, in the present case, the transfers to the trust in December, 1978, were made with expressed intent to shelter assets from liability for potential hospital bills and from Mrs. Beason in the event of a divorce or separation. Neb.Rev.Stats. §§ 36–606 and 36–607 provide:

**36–606. Conveyances by a person about to incur debts; fraudulent; when.** Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he or she will incur debts beyond his or her ability to pay as they mature, is fraudulent as to both present and future creditors.

**36–607. Conveyances made with intent to defraud.** Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

By Mr. Beason's own admission, the transfers at issue were clearly fraudulent conveyances. As noted infra, the Beasons treated the trust property as their own; they continued to live in the residence and use the office space; they paid no rent for such use; they made mortgage and insurance payments; and they collected income from rental property. Conversely, there is no evidence that the trusts or trustees ever exercised any ownership rights over the property. Quite simply, the trusts are shams, lacking economic reality, and the trust property may be levied on to satisfy the Beasons' tax liability.

■ In view of the foregoing, it is clear that the trusts, as alter egos for the taxpayers, have no standing to sue under 26 U.S.C. § 7426. The person against whom the tax is assessed cannot maintain a wrongful levy action. *Shannon v. United States,* 521 F.2d 56 (8th Cir.1975). Accord-

ingly, plaintiffs' complaint will be dismissed, and costs will be assessed to the Beasons as true parties prosecuting this action.

Additionally, the Court notes the history of this case has been fraught with dilatory tactics and contumacious behavior on the part of plaintiffs' counsel. Defendant has moved for costs and attorney's fees pursuant to Fed.R.Civ.P. 11 (Filing No. 38). Because of Mr. Tranakos' failure to comply with orders of this Court, the Court was compelled to order Mr. Tranakos to appear at a show cause hearing on July 31, 1986. In the interests of justice, the Court finds plaintiff's counsel should be assessed attorney's fees in connection with that hearing. Plaintiffs' counsel will be required to pay costs incurred by the United States in attending the hearing. The United States shall submit by affidavit a statement of costs incurred within two weeks of the date of this order. Judgment in that amount will be taxed to Arthur P. Tranakos individually.

An Order in conformity with the terms of this memorandum opinion will issue this date.