ROBERT D. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 29741-87.
United States Tax Court
T.C. Memo 1989-128; 1989 Tax Ct. Memo LEXIS 128; 56 T.C.M. (CCH) 1553; T.C.M. (RIA) 89128; March 27, 1989. Richard L. Kuhlman, for the petitioner. Albert B. Kerkhove, for the respondent. GERBER
MEMORANDUM OPINION GERBER, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax, as follows: Additions to Tax
Income
Section
Section
Section
Section
Section
Year
Tax
6651(a)(1) [1]
6653(a) [2]
6653(a)(2)
6654
6661
1980
$ 19,147
$ 4,787
$   957
--
$ 1,218
$   -- 1983
27,715
6,929
1,386
*
1,696
6,929
1984
32,769
8,192
1,638
*
2,058
8,192
*130 The issues presented for our consideration are: (1) Whether amounts received and deposited in petitioner's bank accounts were income to him in the years of receipt; (2) whether petitioner is liable for additions to tax pursuant to the Internal Revenue Code provisions identified above; and (3) whether petitioner is liable for self-employment tax for the taxable years 1980, 1983 and 1984. Petitioner resided in Fremont, Nebraska, at the time his petition was filed. Respondent determined that petitioner did not file Federal income tax returns for 1980, 1983 and 1984, and petitioner does not disagree with this determination. During the years in issue petitioner engaged in transactions which are described as being involved with "loan brokerage." A few variations of a pro forma agreement were used to evidence the transactions. A representative agreement would contain the following terms: AGREEMENT
Comes now John G. Gordon, of Bowling Green, County of Hardee, State of Florida, being joined herein by Robert D. Miller, d/b/a Diversified Idea Expansion Services, Inc., of Fremont, County of Dodge, State of Nebraska, and enter into the following Agreement, to *131 wit: The Borrower, supra, is seeking a monetary loan in the amount of $ 20 Million, and has retained "Miller" to assist in an attempt to secure or acquire said loan. REFUNDABLE Participation Fee in the amount of FIVE THOUSAND DOLLARS, ($ 5,000.00) shall accompany this application in the form of CERTIFIED CHECK, along with necessary documentation ancillary and attempted acquisition of said loan; upon closing the Commission accruing will be one% of the net usable funds obtained. Participation fee shall be refunded to the Borrower upon written notice to "Miller" that Borrower does not wish to further pursue the attempts to secure or acquire said loan, or in fact no loan is obtained. Refund shall [be] made in the form of Bank Money Order, Cashier's Check, or other Negotiable Instrument in like amount as was received, on the First day of the Month following receipt of said written notice, less expenses incurred prior thereto. Applicant hereby authorizes the lender or lenders agent to compensate "Miller" with all Commissions accruing immediately upon closing. Dated this 23rd Day of March, 1984.
Approved as to form: *132 /s/ John G. Gordon
APPLICANT /s/ Robert D. Miller
ROBERT D. MILLER The parties stipulated 27 representative agreements reflecting different "loan applicants" for similarly large amounts "to be borrowed." In most instances the applicant paid $ 5,000 as a "REFUNDABLE Participation Fee" (fees). Petitioner deposited some or all of the fees into his bank accounts. Respondent reconstructed petitioner's income by means of a bank deposits analysis and determined that petitioner had unreported commission income of $ 49,150, $ 70,808 and $ 82,098 for 1980, 1983 and 1984, respectively. The parties have agreed that petitioner is entitled to business expenses in the amounts of $ 10,709, $ 16,438 and $ 17,095 for 1980, 1983 and 1984, respectively. Additionally, it was agreed that petitioner is entitled to itemized deductions of $ 8,687 for each year and an additional personal exemption for 1983 and 1984. With the exception of four checks totaling $ 16,465 and received by petitioner during 1984, there appears to be agreement about the deposits representing "REFUNDABLE Participation Fees." These four checks are not in amounts which generally correspond with the amounts set forth *133 in the 27 representative agreements. They constitute the proceeds of loans to petitioner and, therefore, are not includable in the bank deposit analysis for 1984. Petitioner did not secure or acquire any loans for applicants during the years 1980, 1983 or 1984. As of December 29, 1986, numerous "sight drafts" were issued by petitioner. The drafts contained the statement that they were "redeemable in a certificate of credit, at full face value." Additional "sight drafts" were dated in 1987. Some of the drafts appear to be made out in favor of applicants and some to other potential payees or creditors. Petitioner did not actually repay any of the fees to applicants. The parties have limited the facts in this case to those presented in order to focus upon the narrow question of whether the "REFUNDABLE Participation Fees" were income to petitioner in the year of receipt. In this setting, respondent argues that the bank deposits are prima facie evidence of income which is includable in petitioner's gross income unless excludable by law. Sec. 61(a)(1); sec. 1.61-1(a) Income Tax Regs. Respondent also argues that petitioner bears the burden of proving *134 that the bank deposits are not includable in his income. Petitioner does not disagree, but contends that he has shown that the fees were refundable and that he held them in a fiduciary capacity as stated in the agreement. Petitioner then argues that the burden of going forward would shift to respondent. Petitioner also contends that $ 16,465 of the 1984 deposits were loans to him and not fees. Finally, respondent argues that petitioner was not acting in a fiduciary capacity regarding the fees. Addressing first the question concerning the burden of proof and the burden of going forward, petitioner relies upon Jackson v. Commissioner,73 T.C. 394 (1979). Petitioner's reference to Jackson is inapposite because that case involved a situation where respondent reconstructed the taxpayer's income from alleged sources and there was no admissible evidence that connected the taxpayer with the sources during the period in issue. Under those extraordinary circumstances, respondent is required to show a source of income. The concept involved in Jackson relates to the presumption of correctness which normally attaches to respondent's statutory notice of deficiency. *135 A holding that the notice was "arbitrary or capricious," has the effect of shifting the burden of coming forward with the evidence to respondent to establish the existence and amount of any deficiency. In the case now before us, petitioner admits there is an income producing activity or potential source evidenced by the bank deposits and his professed loan brokerage activity. The disagreement between the parties concerns whether the deposits are income (as contended by respondent) or represent funds held in trust for others (as contended by petitioner). Under the circumstances of this case, petitioner bears the burden of going forward as well as the burden of proving that the deposits are not income. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Initially, we note that a bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income. Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Petitioner contends that since the agreements with loan *136 applicants label the payments or amounts received as "refundable" that the amounts are, therefore, not includable in income. Based upon the evidence presented in this case however, we find the deposits are income to petitioner. A literal reading of the agreement in question reflects that petitioner has not yet earned the commissions for "secur[ing] or acquir[ing]" loans for applicants at the time of receipt of the "REFUNDABLE Participation Fee." On the other hand, the fee paid to petitioner by each applicant is not expressly committed to a trust relationship and petitioner's control and use of the so-called fee is unfettered. Petitioner placed some or all of the fees received in his business or personal bank account and commingled them with his own assets. The fees were not refundable at or after a time certain and petitioner was not obligated to return the fee unless the applicant provided written notice to petitioner. Moreover, the written notice had to be received by petitioner (placing the burden upon applicants to seek and find petitioner), after which petitioner was obligated to refund the fee less expenses on the first day of the month following receipt of the written *137 notice from the applicant. These circumstances are tantamount to absolute possession and control of the fees by petitioner, with the possibility of divestment after the occurrence of a condition subsequent. The facts in this case place it squarely within the Supreme Court's holding in Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 431 (1955), that "all income from whatever source derived," as stated in section 61, encompasses all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." See also James v. United States,366 U.S. 213, 218-219 (1961). The amounts paid to petitioner under the agreement were given without conditions upon petitioner and the applicants were not beneficiaries of an express or constructive trust of which petitioner claims to have been a fiduciary or trustee. In fact, the applicants were not entitled to any payment from petitioner until petitioner had received their written notice. Generally the *138 following elements are essential to the creation of a trust: (1) a person competent to create a trust; (2) an indication of intention; (3) property to which the trust may and does pertain; (4) a definite and complete present disposition of that property; (5) a provision at least by implication, for the office of trustee; and (6) a person capable of holding the equitable interest in the property as beneficiary. * * * [Jaiser v. Milligan,120 F. Supp. 599, 612 (D. Neb. 1954).] See also F.P.P. Enterprises v. United States,646 F. Supp. 713, 717 (D. Neb. 1986), affd. 830 F.2d 114 (8th Cir. 1987). Considering the terms of the agreements in question, we find petitioner's claim of trust or fiduciary relationship to broadly miss the mark. Few, if any, elements of trust or fiduciary relationship between petitioner and any of the applicants exist under the agreement(s) being considered. Accordingly, we hold that the bank deposits, with the exception of those attributable to the $ 16,465 found to be loans in 1984, constitute income to petitioner as determined by respondent. Respondent also determined additions to tax under sections *139 6651(a)(1) and 6654 for all 3 years; section 6653(a) for 1980 and sections 6653(a)(1), 6653(a)(2) and 6661 for 1983 and 1984. Petitioner argues that if we find deficiencies in income tax, then he should not be subject to the additions to tax because he acted in a reasonable manner and/or that he had reasonable cause for not filing Federal income tax returns for 1980, 1983 and 1984. Concerning the addition to tax under section 6651(a)(1) for failure to file, petitioner admits that he did not file, but argues that he had reasonable cause. Although petitioner has made this macroscopic argument on brief, he has failed to state which facts in this record we should consider in order to decide he was reasonable, as claimed. Our review of the record and our holding on the income issue cause us to conclude that petitioner did not have reasonable cause and that he is liable for the addition to tax under section 6651(a)(1) for all 3 taxable years. We further find petitioner liable for the section 6653(a) additions to tax. Section 6653(a) provides that "If any part of any underpayment (as defined *140 in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules or regulations * * *," (Emphasis added.) there shall be added to the tax an amount equal to 5 percent of the entire underpayment, plus 50 percent of the interest payable for 1983 and 1984 only with respect to the portion of the underpayment attributable to the taxpayer's negligence or his intentional disregard of the rules and regulations. By definition, an "underpayment" is caused by, among other things, the fact that a return is untimely filed or not filed at all. Section 6653(c); Emmons v. Commissioner, 92 T.C.    (February 16, 1989). In determining that petitioner's failure to file returns caused underpayments, we have not completed our inquiry of whether the underpayments were due to negligence or intentional disregard of the rules and regulations. The pivotal question now is whether the failure to file a return is negligent or an intentional disregard of the rules and regulations. Considering the facts presented in this case, we hold in the affirmative. *141 Negligence, within the meaning of section 6653(a), has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Taxpayers have a statutory duty to timely file their income tax returns, section 6072(a), and the breach of this duty is sufficient evidence of negligence. Emmons v. Commissioner, supra. Ordinarily a reasonable prudent person would comply with a statutorily prescribed deadline. Because we have already held that petitioner's failure to file was not reasonable and petitioner has not come forward with adequate countervailing evidence we find that petitioner is liable for the section 6653(a) negligence addition for 1980 and the section 6653(a) (1) and (2) negligence additions for 1983 and 1984. Respondent also determined a section 6661 addition for substantial understatement of income tax for the 1983 and 1984 taxable years. Section 6661 provides for a 25 percent [3] addition if there is a substantial understatement of income tax. An understatement is substantial *142 if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). It appears [4] that the deficiencies for 1983 and 1984 meet the substantiality requirement and that the addition should apply. This remains a mathematical matter for the parties to compute in their computations under Rule 155. Section 6654 provides for an addition to tax for failure of individuals to pay estimated income tax. Petitioner bears the burden of showing that respondent's determination that section 6654 applies to all 3 taxable years is in error. Petitioner *143 has failed to carry his burden of proof and, accordingly, we hold that section 6654 applies for all 3 taxable years. Respondent determined that petitioner was liable for self-employment tax for 1980, 1983 and 1984. Petitioner bears the burden of showing that respondent's determination is in error. Petitioner has failed to carry his burden of proof and, accordingly, we hold that petitioner is liable for self-employment tax for all 3 taxable years. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. Rule references are to this Court's Rules of Practice and Procedure. ↩
2. Sec. 6653(a) is applicable for the 1980 taxable year and sec. 6653(a)(1)↩ is applicable for the 1983 and 1984 taxable years. *. 50 percent of the interest due on the deficiencies for 1983 and 1984.↩
3. Sec. 8002(b) of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951, increased to 25 percent the addition for substantial understatement, effective for additions assessed after Oct. 21, 1986. Because the addition will be assessed after that date, the 25 percent rate applies. Pallottini v. Commissioner,90 T.C. 498↩ (1988). 4. Our holding that $ 16,465 of the bank deposits represent loans may bring the 1984 taxable year below the $ 5,000 threshold.↩