WILLIAM E. AND MILDRED B. KEEFOVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Keefover v. Commissioner
Docket No. 34904-87.
United States Tax Court
T.C. Memo 1989-151; 1989 Tax Ct. Memo LEXIS 151; 57 T.C.M. (CCH) 37; T.C.M. (RIA) 89151; April 6, 1989; As amended April 10, 1989 Robert L. Johnson, for the petitioners. W. Scott Green *153 and Thomas C. Morrison, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax liability and additions to tax for taxable years 1982 and 1983 as follows: Additions to Tax
Year
Deficiency
§ 6653(a)(1) [1]
§ 6653(a)(2)
§ 6661(a)
1982
$  8,810.00
$ 440.50 *
$ 2,202.50
1983
16,731.45
836.57 *
4,183.00
After concessions, the issues remaining for decision are: (1) Whether income is attributable to petitioners or to a trust purportedly created by William E. Keefover; (2) Whether petitioners are entitled to various deductions on their personal returns in excess of those allowed by respondent. (3) Whether any part of an underpayment of tax by petitioners was due to negligence or intentional disregard of rules and regulations within the meaning of section *154 6653(a)(1) and (2); (4) Whether petitioners are liable for an addition to tax pursuant to section 6661(a) for substantial understatement of income tax liability; (5) Whether, pursuant to section 6621(c), petitioners are liable for the increased rate of interest applicable to substantial underpayments of tax attributable to tax motivated transactions; and (6) Whether, pursuant to respondent's motion, damages should be awarded to the United States and against petitioners pursuant to section 6673 for maintaining this action primarily for delay or for maintaining a frivolous or groundless position. FINDINGS OF FACT
Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners William and Mildred Keefover, husband and wife, were residents of Bridgeport, Nebraska, when the petition in this case was filed. William E. Keefover ("William") has made his living as a surveyor since 1948. Since 1964, he has been the county surveyor for Morrill County, Nebraska. He has also maintained a private surveying business since 1964. Mildred B. Keefover ("Mildred") was a homemaker, and *155 in addition ran a small direct sales business during the years in issue. Mr. and Mrs. Keefover filed joint Federal income tax returns during each of the taxable years in issue. In 1980, William turned 65 and he and his wife began considering retirement and estate planning. At that time neither had made a will. Through friends and neighbors, the Keefovers came into contact with Glen B. Nelson who advised petitioners on the use of trusts as a device to transfer accumulated wealth and to avoid probate proceedings. Mr. Nelson is neither an accountant nor attorney. Petitioners purchased instructions and forms for drafting such trusts for $ 2,000 from Mr. Nelson. On September 6, 1980, William executed a trust instrument purportedly creating the M. B. and W. E. Keefover Trust (hereinafter the "Main Trust"). Mildred accepted appointment as initial trustee of the Main Trust. She in turn appointed petitioners' adult children, Richard Keefover, Marvin Keefover and Donna Landrigan, and their son-in-law, Robert Landrigan, as additional trustees. Mildred resigned as trustee on September 20, 1980, at which time she purportedly transferred her joint interest in certain real and personal *156 property to William. Mildred's transfer of her interests was made with the expectation that units of beneficial ownership in the Main Trust would be transferred to her. William simultaneously transferred the property to the Main Trust in exchange for 100 units of Beneficial Interest representing 100 percent of the beneficial interest in the Main Trust. The next day William's certificate of Beneficial Interest was canceled and the 100 units were reissued, 50 to Mildred and 50 to William. These certificates were immediately canceled and new certificates were issued to the following individuals in the specified amounts: Units
Mildred Keefover
20 William Keefover
5 Richard Keefover
21 Marvin Keefover
21 Donna Landrigan
22 Petitioners' Grandchildren
[2] 11 Total
100 No subsequent changes in ownership of beneficial units occurred through the taxable years in issue. The properties transferred to the Main Trust by petitioners included their personal residence, various *157 household items and income-producing stocks and bonds. These properties constituted a "large portion" of petitioners' total assets. Petitioners continued to live in the residence and use the household items after their purported transfer to the Main Trust, but did not pay rent. Petitioners retained title to two automobiles which they subsequently leased to the Main Trust. The stated purpose of the Main Trust was to provide for the administration of the trust assets, to prevent dissipation of wealth, to provide for loved ones, to increase the conditions of liberty and freedom to the beneficiaries of the trust and others, to promote the family concept, and to encourage and promote charities. The trust was irrevocable. The trustees were given broad powers to hold and manage the corpus of the trust. Pertinent sections of the trust instrument relating to the powers of the trustees and the identity and rights of beneficiaries follow: BENEFICIARIES The beneficiaries of this trust are those persons holding certificates representing units of beneficial interest, whose names are recorded and ascertainable in the trust records. BENEFICIAL INTERESTS OF THE TRUST The beneficial *158 interests of this trust, as a convenience and for purposes of distributions, are divided into 100 units. They are non-assessable, non-taxable, and non-negotiable. No beneficiary may transfer any unit of beneficial interest to anyone else without the approval of at least one other beneficiary of the trust (except when that beneficiary is the sole beneficiary) other than the person to whom he is transferring the units of beneficial interest (except when there are only two beneficiaries and the transfer is between them). When a transfer of units of beneficial interest is made by a sole beneficiary, or one of only two beneficiaries to the other beneficiary, the transfer must be approved by an independent trustee. The lawful owner may, if he so desires, cause his beneficial certificate to be registered with the trust recordkeeper. * * * RECORDING THE NAMES OF BENEFICIARIES
The name of each beneficiary of this trust must be recorded by the trust recordkeeper in the trust records, along with any changes in those names, and the extent of the units of beneficial interest held by each of said beneficiaries. An up-to-date list of these beneficiaries may be certified by the trustees, upon *159 approval of the Board of Trustees for the release of that information. Any third party may rely upon that certified list in all transactions with the trustees or in behalf of the trust, and that list is intended to represent a clear and definite means for the ascertainment of the beneficiaries of this trust. TRUST MANAGEMENT AND CONTROL OF THE TRUST The trustees shall hold office and exercise collectively the exclusive management and control of the trust property and affairs. The property of the trust shall be held in joint tenancy. All significant actions and decisions on the part of the trust shall be made by the trustees actions unanimously. ADVERSE PARTY Notwithstanding any other provisions in this trust instrument no power shall be exercised, nor any action taken by the trustees, except upon the unanimous consent of all trustees having authority to exercise that power and only upon the approval of an adverse party. INDEPENDENT TRUSTEES Each distribution, payment of income or corpus, or any other action affecting the beneficial enjoyment of the property of this trust, shall be approved and exercised only by independent trustees, that is by trustees, not including *160 the trustor, of whom it can be said that no more than half are related or subordinate parties who are subservient to the wishes of the trustor. The phrase "unanimous action", otherwise set forth in other portions of the trust instrument, shall mean, with respect to such decisions the unanimous action of those trustees who are allowed to take part in the use of the particular power, not the unanimous action of all possible trustees. ASCERTAINABLE STANDARDS The trustee may accumulate for or distribute to any beneficiary such portions of the income or corpus of the trust as the trustees deem necessary for the support, care, maintenance, education, medical expenses, or emergencies of the beneficiaries. No distribution from the trust shall be made except in conformity with this external ascertainable standard. POWER TO ACCUMULATE INCOME IN THE TRUST The trustees, in their fiduciary capacity, shall have the power to distribute to or accumulate income for the beneficiaries of the trust, in accordance with the terms, standards, and conditions otherwise set forth in this trust instrument. POWER TO DISTRIBUTE PRINCIPAL The trustee shall have the power, exercisable only in a fiduciary *161 capacity and in accordance with the terms, standards and conditions otherwise set forth in this trust instrument to distribute principal to the beneficiaries, or to make divisions or distributions of the trust estate in whole or in part, for delivery or transfer to the beneficiaries of any part or any portion thereof, at such valuation as is established by the trustees to be the fair value of the part or portion; or the trustees may convert the trust estate or any portion thereof into cash and distribute the net proceeds to the beneficiaries. PROHIBITION AGAINST DISTRIBUTION FOR SUPPORT No income or principal of the trust estate shall be used to discharge, in whole or in part, the trustor's legal obligations of support. ALLOCATIONS OF RECEIPTS TO INCOME OR PRINCIPAL The trustees shall have the power, exercisable in a fiduciary capacity, to determine what is principal or income of the trust, and to apportion and allocate receipts and expenses and other charges between those two accounts, including also the power to charge in whole or in part to principal, or to amortize out of or charge forthwith to income, premiums paid on the purchase of bonds or other obligations. The trustees *162 shall not be required to establish a reserve for depreciation as to charges against income, therefore, but they may do so if in their discretion they so determine. A separate checking account was established for the Main Trust. Petitioners and the trustees had signatory authority over this account. William occasionally wrote checks against it. The checkbook and other records of the Main Trust were kept at petitioners' residence. The Main Trust instrument also required the trustees to hire full-time caretakers to care for the assets of the trust. Petitioners were hired as caretakers of the Main Trust. The duties of petitioners pursuant to the caretakers' contract included mowing the lawn at their residence, cleaning the house and assuring that the telephone and utility bills were paid. In consideration of these duties, petitioners were to be paid $ 15.00 per hour for their work. However, no payments were made to petitioners pursuant to the caretakers' contract until sometime in 1987. On September 22, 1980, Robert and Donna Landrigan, in their capacities as trustees of the Main Trust, executed a trust instrument purportedly creating the W. E. Keefover - Surveying Trust (hereinafter *163 the "Surveying Trust") The trust corpus consisted of $ 100 from the Main Trust. Petitioners were appointed as trustees of the Surveying Trust. A certificate representing all 100 units of beneficial interest in the Surveying Trust was issued to the Main Trust. On their personal income tax returns for taxable years 1982 and 1983, petitioners reported as income only William's wages from Morrill County, certain interest and dividends from stocks and bonds not transferred to the Main Trust, and $ 9,000 and $ 3,500 in distributions to Mildred from the Main Trust in 1982 and 1983, respectively. Petitioners also showed a net loss of $ 451.69 and net income of $ 40.43 in 1982 and 1983, respectively, on Schedule C from "Direct Sales and Car Rentals." Gross income of $ 9,897.20 and $ 11,078 shown on Schedule C in 1982 and 1983, respectively, was attributable to "rental income" received from the Main Trust for lease of the two vehicles, title to which remained with petitioners. Inter alia, the following categories and amounts of income were reported on the Fiduciary Income Tax Returns (Form 1041) filed on behalf of the Main Trust in 1982 and 1983: 1982
1983
Dividend Income
$ 19,351
$ 23,243
Interest Income
3,582
5,052
Capital Gains
3,734
3,244
$ 26,667
$ 31,539
*164 William's income from his private surveying activities, along with certain dividends and interest, were reported in the following amounts on Corporation Income Tax Returns (Form 1120) filed on behalf of the Surveying Trust in 1982 and 1983: 1982
1983
Surveying Income
$ 21,419
$ 26,258
Interest Income
2,635
2,476
Dividend Income
2,049
2,258
$ 26,103
$ 30,992
Respondent in his statutory notice of deficiency determined that the above described items of income claimed by the Main Trust and the Surveying Trust were properly the income of petitioners. Further, respondent determined that certain expenses deducted by the trusts were nondeductible while others should have been deducted by petitioners on their individual returns. Respondent also disallowed certain deductions claimed by petitioners on their individual returns. Without making any concessions as to the validity of the Surveying Trust for Federal tax purposes, petitioners have conceded that the income reported by the Surveying Trust was properly reportable on their individual returns. OPINION Respondent proposes several alternative grounds in support of his determination that petitioners, *165 rather than the Main Trust, are taxable on income reported by the Main Trust. Petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). We first address respondent's contention that the Main Trust was invalid under Nebraska law. [3]It is essential to the creation and existence of a trust that beneficiaries be designated with sufficient clarity and certainty to be capable of identification. 1 Restatement, Trusts 2d, sec. 112 at 243 (1959). Respondent argues that the beneficiaries were not designated with sufficient clarity within the trust instrument and that the instrument was thus ineffective in creating a trust. Respondent cites First National Bank in Ord v. Schroeder,222 Neb. 330, 383 N.W.2d 755 (1986), in support of his position. We find the facts of that case indistinguishable from those before us and hold that the trust instrument executed by William was ineffective in creating the Main Trust. *166 In First National Bank in Ord, the beneficial interests in the trust were divided into one-hundred units represented by transferable trust certificates the lawful possessors of which were construed to be the true and lawful owners thereof. However, the trust document contained no provision indicating who was to receive the certificates of beneficial interest, nor did it empower the trustees to make that determination. The Nebraska court held that since the trust instrument merely designated the owner of the certificate as the beneficiary without providing how possession and ownership shall occur, the instrument did not adequately identify its beneficiaries and the purported trust must thus fail. Here too, the trust instrument divides the beneficial interest in the trust into one hundred units and designates as beneficiaries those persons holding certificates representing units of beneficial interest. As in First National Bank in Ord, there is no provision in the trust document indicating who was to receive the trust certificates or empowering the trustees to make that determination. Contrary to petitioners' assertion, the language in the Main Trust instrument which requires *167 the trustees to keep a record of the holders of certificates of beneficial interest does not serve to materially distinguish this trust instrument from that in First National Bank in Ord. The record keeping requirement only comes into force after someone has become a beneficiary by receiving a certificate of beneficial interest. The instrument does not indicate however, how transferor-beneficiaries become such in the first instance. Thus the Main Trust, on its face, does not adequately identify its beneficiaries (either by name or class) and, therefore must fail. See also F.P.P. Enterprises v. United States,646 F. Supp. 713 (D. Neb. 1986), affd. 830 F.2d 114 (8th Cir. 1987). Even if valid under local law, we would not recognize the Main Trust for Federal tax purposes. We have held that similar "family trusts" lacked economic substance and could not be recognized for Federal income tax purposes. Markosian v. Commissioner,73 T.C. 1235 (1980); Furman v. Commissioner,45 T.C. 360 (1966), affd. 381 F.2d 22 (5th Cir. 1967). Petitioners have not demonstrated that the facts in the instant case are *168 distinguishable from our prior decisions in any way. After the execution of the trust, petitioners continued to use the trust assets as they had before. Petitioners continued to exercise control over the trust income through their custody over the trust checkbook and signatory authority over the trust checking account. William continued to run his surveying business as he had in the past. Petitioners continued to live in their residence just as they had prior to creation of the trusts. In short, creation of the trusts did nothing to alter the status quo. When the form of a transaction does not alter any economic relationships, we will look through the form and apply the tax law in accord with the substance of the transaction. Markosian v. Commissioner, supra at 1241. We find that the Main Trust lacked economic substance and disregard it for Federal tax purposes. Respondent's final argument for inclusion of the Main Trust income in petitioners' personal returns is that the trust falls within the grantor trust rules of sections 671 through 677. *169 In general, the grantor trust rules serve to tax the income of a trust to the grantor in circumstances where he or she has transferred income-producing property to a trust without parting with full dominion and control over the property or the income which it produces. Scheft v. Commissioners,59 T.C. 428, 430 (1972). [4]
Petitioners point to the provisions of the trust instrument forbidding distribution of trust funds without the approval of an adverse party trustee. They claim that their children qualify as adverse party trustees by reason of their ownership of units of beneficial interest in the trust. Petitioners therefore *170 argue that they have relinquished dominion and control over the trust assets and income and the Main Trust must therefore be recognized. Section 672(a) defines an adverse party as any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of a power which he possesses respecting the trust. Whether the economics of a trust cause a trustee or other party to be an adverse party is essentially a factual question dependent on the merits of each particular case. Paxton v. Commissioner,520 F.2d 923, 925 (9th Cir. 1975). Petitioners argument is unpersuasive. Technical compliance with the formalities of the grantor trust rules cannot serve to breathe economic reality into an arrangement where none exists. S. Rept. No. 1622, 83d Cong., 2d Sess. 365 (1954); Furman v. Commissioner, supra at 366. [5] Petitioners' children were trustees in name only. Petitioners have not proven that the children exercised *171 any dominion and control over the trust assets and income or were ever intended to do so. In his statutory notice, respondent disallowed certain deductions taken by petitioners on their individual returns. He also allowed certain deductions taken on the Main Trust and Surveying Trust returns to be taken on petitioners' individual income tax returns and disallowed the remainder. Petitioners bear the burden of proof on this issue as well. Rule 142(a); Welch v. Helvering, supra.They have failed to offer any evidence on this issue. Therefore, respondent's determination with respect to allowable and nonallowable deductions is sustained. With respect to the additions to tax for negligence under sections 6653(a)(1) and 6653(a)(2), the burden of proof is on petitioners to rebut respondent's determination. Bixby v. Commissioner,58 T.C. 757, 791 (1972). Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would under *172 the circumstances. Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967). We find that an ordinarily prudent person would have sought independent professional advice before subscribing to a trust scheme which the promoter claimed would shift the bulk of his income to other entities and would allow tax deductions to be claimed for obviously personal expenditures. [6] Petitioners failed to obtain independent professional advice or prove that they had any reasonable grounds for believing Mr. Nelson's representations. We therefore find that petitioners' entire underpayment was due to negligence and sustain respondent's determination of additions to tax under sections 6653(a)(1) and (a)(2). Respondent also determined an addition to tax under section 6661(a) for substantial understatement of income tax liability. Petitioners have failed to demonstrate that the relevant facts affecting their tax treatment were adequately disclosed with their returns or were supported by substantial authority. Petitioners are liable for the 6661(a) addition to tax should the Rule 155 computation show that *173 petitioners' understatement is "substantial" within the meaning of section 6661(b). Respondent also determined petitioners' underpayment of tax was substantial and attributable to tax motivated transactions and that the increased rate of interest pursuant to section 6621(c) was therefore applicable. Respondent alleges that petitioners' underpayment was due to a "sham or fraudulent transaction." See section 6621(c)(3)(A)(v). Petitioners conceded that the income of the Surveying Trust was reportable on their personal returns without proving that the Surveying Trust was not a sham. We have found that the Main Trust was a sham since it lacked economic substance. We therefore find that the increased rate of interest applies to petitioners' underpayment. See Cherin v. Commissioner,89 T.C. 986, 1000-1001 (1987). Finally, we consider respondent's request for damages under section 6673. That section permits the Court to award damages to the United States in an amount not in excess of $ 5,000, whenever it appears to the Court that the proceedings before it "have been instituted or maintained by the taxpayer primarily for delay, that the taxpayer's position in such *174 proceeding is frivolous or groundless," or that the taxpayer unreasonably failed to pursue available administrative remedies. Under the circumstances of this particular record, we decline to award damages in this case. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50% of interest due on entire deficiency.↩
2. A certificate evidencing ownership of one unit of Beneficial Interest was issued in the name of each of petitioners' eleven grandchildren.↩
3. We decline petitioners' invitation to place the burden of proof on this issue on respondent. The explanation in the notice of deficiency that the income of the Main Trust was being attributed to petitioners under sec. 61 was sufficiently broad to apprise petitioners that invalidity under state law was a potential ground for respondent's determination. We do not think that respondent's assertion of this alternative ground in his trial memorandum resulted in undue surprise to petitioners. See McSpadden v. Commissioner,50 T.C. 478, 492-493↩ (1968).
4. Since Mildred transferred her property interests to William for purposes of conveyance as part of the trust corpus, Mildred is in actuality a co-grantor of the trust. Schulz v. Commissioner,686 F.2d 490, 496↩ (7th Cir. 1982), affg. a Memorandum Opinion of this Court. Thus if either William or Mildred retained any of the dominion and control over the trust corpus or income therefrom prescribed in sections 671 through 677, the income from the trust is taxable to them.
5. See also Miller v. Commissioner,T.C. Memo. 1986-278↩.
6. See Harris v. Commissioner,T.C. Memo. 1981-46↩.